

## MERCHANTS
### BONDING COMPANY

2100 FLEUR DRIVE, DES MOINES, IOWA 50321-1158 • (515) 243-8171 • (800) 678-8171
8303 N. MOPAC, SUITE B 400, AUSTIN, TEXAS 78759 • (512) 343-9033 • (800) 252-9656

# GENERAL APPLICATION AND AGREEMENT OF INDEMNITY
## CONTRACTORS FORM

THIS AGREEMENT, made and entered into with and in favor of the MERCHANTS BONDING COMPANY (Mutual), a corporation duly incorporated under the laws of the State of Iowa, (hereinafter referred to as the Company), and executed by

Chagrin Valley Paving, Inc.

_____ (hereinafter referred to as the Contractor) and

Paul A. Phillips, Kara L. Phillips, Chagrin Valley Paving LLC, Phillips National Paving Group LLC,

Phillips Family Enterprises LLC, Store It, Lock It, Leave It LLC

_____ (hereinafter referred to as Indemnitors).

### WITNESSETH:

WHEREAS, the Contractor and/or Indemnitors, in the transaction of business and in the performance of contracts and in the fulfillment of obligations generally, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"), and

WHEREAS, upon the express condition that this Agreement be executed, the Company has executed, or procured the execution of, and may from time to time execute or procure the execution of such Bonds.

NOW, THEREFORE, in consideration of the execution of any such Bond or Bonds and other valuable considerations, and as an inducement to such execution, Contractor and Indemnitors (hereinafter collectively referred to as the Undersigned, jointly and severally), agree and bind themselves, their heirs, executors, administrators, successors, assigns, wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired as follows:

FIRST: The Undersigned will pay to the Company upon the execution of each such Bond the initial premium computed in accordance with the rates currently charged by the Company at the time such Bond is executed and the Undersigned will also pay all renewals or additional premiums computed at such rates until proof is furnished satisfactory to the Company of its discharge from all liability under such Bond. Should the initial premium be computed on a rate per $1,000 contract price and should the final contract price be more or less than the price upon which such premium charge was based, the Undersigned will pay to the Company an additional premium, or be entitled to receive from the Company a return premium, as the case may be, computed upon such difference in the contract price, subject to the applicable Waiver of Premium Rule.


EXHIBIT A

SECOND: The Undersigned shall unconditionally indemnify and keep indemnified the Company against any and all liability, loss and expense of whatsoever kind or nature, including, but not limited to, court costs, attorneys' fees, and interest, which the Company may sustain or incur (1) by reason of having executed or procured execution of any Bond or Bonds, (2) by reason of the failure of the Undersigned to perform or comply with this Agreement, or (3) to enforce any of the covenants and conditions of this Agreement. The Undersigned agree to furnish money to the Contractor or to the Company as needed for the prompt payment of labor and materials used in performance of contracts guaranteed by a Bond when and as requested to do so by the Company. The Company shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit, or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and the Company's determination shall be final, conclusive and binding upon the Undersigned. Vouchers, affidavits or other evidence of payment by the Company of any loss, cost or expense shall be prima facie evidence of their propriety and the liability of the Undersigned to the Company for such loss, cost or expense. In the event of any payment by the Company, the Undersigned agree that in any accounting between the Company and the Undersigned, the Company shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. If the Undersigned request that the Company litigate any claim or demand, defend any suit, or appeal from any judgment, they shall deposit with the Company, at the time of any request, cash or other collateral satisfactory to the Company in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Company together with interest, costs and attorneys' fees, providing that, in the sole opinion of the Company, there is a legitimate basis for disputing the validity of the claim, demand, suit or judgment.

THIRD: The Undersigned hereby expressly waive notice by the Company and agree and understand that the Company in its sole discretion is authorized and empowered to assent, or refuse to assent, to any change or modification whatsoever in the Bonds and/or contracts guaranteed by a Bond and the contracts' accompanying general conditions, plans or specifications. These changes and modifications may include, but are not limited to, any change in the time for completion and to payments or advances being made before the same may be due, and to assent, or refuse to assent, to take any assignments, and to execute, or consent to the execution of, any continuation, extension or renewal of the Bonds and to execute any substitutes, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, all without notice to or knowledge of the Undersigned. It is expressly understood and agreed that the Undersigned shall remain bound under the terms of this Agreement, even though any such assent or refusal to assent by the Company does or might substantially increase the liability of the Undersigned, and that the Undersigned shall be liable to the Company pursuant to this Agreement on account of any such altered, changed, modified, amended, limited, renewed, substituted, or extended Bonds. The Undersigned hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Company or the rights or liabilities of the Undersigned.

FOURTH: The Undersigned agree and expressly declare that all payments received or to be received from any contracts bonded by the Company are trust funds, whether in possession of the Contractor or another, for the benefit of the Company, and for the payment of obligations incurred on the contracts for labor, materials or services, and for no other purpose, until the Company is completely exonerated from liability on the Bond or Bonds which cover the contracts. The Undersigned shall, upon demand of the Company and in implementation of the trust hereby created, establish an account with a bank designated by the Company, which account will be designated as a trust account for the contracts bonded by the Company. Withdrawals from this account will be made only by the Company or its designated representatives, if so desired by the Company. Said trust or trusts shall terminate on the payment by the Undersigned of all of the contractual obligations for the payment of which the trust or trusts are created, or upon the expiration of 20 years from the date of this Agreement, whichever occurs first.

FIFTH: The Company shall have the right, at its option and in its sole discretion, to take possession of the work under any and all contracts guaranteed by any such Bond whenever, in its sole opinion, such action is desirable or necessary, and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the reletting or completion thereof by the obligee in any such Bond, or to take such other steps as in the discretion of the Company may be advisable or necessary to secure its release or to secure itself from loss thereunder. All damage, loss or expense of any nature which the Company may incur in this connection shall be borne by the Undersigned.

SIXTH: The Undersigned does hereby assign, transfer and convey to the Company, as of the date of execution of any Bond, for the Company's protection and use and as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any indebtedness or liability of the Undersigned to the Company, whether heretofore or hereafter incurred, the following:

(a) All rights, titles and interests of the Undersigned in and to all machinery, equipment, plant, tools and materials which on the date of execution of such Bond, are, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by such Bond, or elsewhere for the purpose thereof, including materials purchased for or chargeable to said contract which may be in process of construction or in storage elsewhere or in transportation to said site;

(b) All rights of the Undersigned in, or arising in any manner out of, said contract or any extensions, modifications, changes, alterations, or additions thereto;

(c) All rights, actions, causes of action, claims and demands which the Undersigned may have or acquire against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said contract, and against any surety or insurer of any such materialman, subcontractor, laborer or other person, firm or corporation, including any insurer of the Undersigned;

(d) All monies due or to become due to the Undersigned arising out of or in any way related to any bonded contract or to any other contracts, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, and claims and the proceeds thereof. The Undersigned hereby authorize the Company to prosecute, settle, compromise, waive or release any said assigned rights in the name of the Company or in that of the Undersigned and to endorse the name of the payee, and to collect any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights.

SEVENTH: The Undersigned hereby irrevocably nominate and appoint any officer of the Company as the true and lawful attorney-in-fact of the Undersigned, with full right and authority to execute on behalf of, and sign the name of, the Undersigned to any voucher, release, satisfaction, check, bill of sale of all or any property assigned by this Agreement to the Company, or any other document necessary or desired to carry into effect the provisions and purposes of this Agreement. The Undersigned hereby ratify and confirm all that such attorney-in-fact or the Company may do for the purposes set forth in this Agreement. The Undersigned specifically agree to protect, indemnify and save and hold harmless the Company and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which the Undersigned have or might hereafter have against the Company or such attorney-in-fact on account of anything done in enforcing the terms of this Agreement.

EIGHTH: The Company, at its sole election and discretion, is authorized and empowered, but not obligated, to advance or loan to the Contractor any money which the Company may see fit to advance to the Contractor in any form whatsoever, and to guarantee repayment of any loans made by others, but in no event, shall the Company be obligated to use either its own funds, or collateral provided by the Contractor (or a third party) to fund the Contractor (or any designee or assignee of the Contractor) to complete any contract. All money so loaned, advanced or guaranteed, as well as all costs, attorneys' fees and expenses incurred by the Company in connection with such loans, advances or guarantees, unless repaid with legal interest by the Contractor, shall be a loss by the Company for which the Undersigned shall be responsible. The Undersigned hereby waive all notice of such loan, advance or guarantee, or of any default or any other act or acts giving rise to any claim under any such Bond, and waive notice of any and all liability of the Company under any such Bond or any and all liability on the part of the Undersigned to the effect and end that the Undersigned shall be and continue to be liable to the Company hereunder in spite of any notice of any kind to which the Undersigned might have been entitled and in spite of any defenses which the Undersigned might have been entitled to make.

NINTH: In the event the Company procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

In the event the Undersigned shall borrow any money to finance the bonded contract or shall undertake to make any assignment of the bonded contract or any monies due or to become due thereunder, then it is expressly agreed that any such assignment shall be subordinate and inferior to the rights of the Company hereunder, or at law or in equity. Any indebtedness of Contractor now or hereafter held by any Indemnitor is hereby subordinated to any indebtedness of Contractor to Company and such indebtedness of Contractor to Indemnitor shall, if Company so requests, be collected and received by Indemnitor as trustee for Company and be paid over to Company on account of any indebtedness of Contractor to Company, but without reducing or limiting in any manner any liability of Indemnitor under this Agreement.

TENTH: The Undersigned hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by the Company under the law of the United States or of any state or province or of any other government. The Undersigned hereby waive trial by jury in any action or proceeding pertaining to this Agreement. This waiver is knowingly, willingly and voluntarily made by the Undersigned, and the Undersigned represent and warrant that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

ELEVENTH: Until such time as the Company is no longer liable on Bonds covered by this Agreement, the Undersigned agree to meet with a representative of the Company, upon demand of the Company, at the earliest possible time after the demand when, in the sole judgment of the Company, such a meeting is necessary in order to further the intent of this Agreement. At the request of the Company, the Undersigned will be represented by legal counsel at the meeting and will furnish to the Company the name, address and telephone number of such legal counsel at least 24 hours prior to the meeting.

TWELFTH: The Company shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship, and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Company might have if this Agreement were not executed. Upon request of the Company, the Undersigned will procure the discharge of the Company from any Bond and all liability by reason thereof. Separate suits may be brought hereunder against any or all of the Undersigned as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action.

THIRTEENTH: Until such time as the potential liability of the Company under any Bond or Bonds is terminated, the Undersigned will promptly furnish to the Company such information as the Company may request, and the Company shall have the right to examine and copy the books, records and accounts of the Undersigned and inspect the work at any project (whether such project is covered by any Bond or unbonded). Any bank, depository, creditor, obligee of a bond, subcontractor, material supplier or other person, firm, or corporation possessing records or having information concerning the financial affairs and operations of the Undersigned is hereby authorized to furnish to the Company and its representatives or consultants any such records or information requested by the Company. The Undersigned will execute, as requested by the Company, any additional documents to cause the release of records and information authorized by this paragraph. For the purpose of procuring co-suretyship or reinsurance, or of advising persons or companies of any circumstance pertaining to the Bonds, the Company may furnish to other persons or companies copies of any and all records, agreements, financial statements, and any information which it now has or may hereafter obtain concerning the Undersigned.

FOURTEENTH: Immediately upon demand, the Undersigned will deposit with the Company, as collateral security, money or other collateral satisfactory to the Company, equal to (1) the liability of the Company, if established; (2) the liability asserted against the Company; or (3) the reserve established by the Company, or any increase thereof, to cover any liability for any loss or expense for which the Undersigned may be obligated to indemnify the Company under the terms of this Agreement. The Company shall have the right to use the collateral, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned is or would be obligated to indemnify the Company under the terms of this Agreement. The Company shall have no obligation to invest or to provide a return on the collateral. The Undersigned shall be entitled to the refund of any unused portion of the collateral upon termination of the liability of the Company on all Bonds and the performance by the Undersigned of all obligations to the Company under the terms of this Agreement. The Company's demand shall be sufficient if sent by regular first class, registered or certified mail, by facsimile transmission, or by personal service to the Undersigned, regardless of whether actually received.

FIFTEENTH: This Agreement shall constitute a Security Agreement to the Company and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. This Agreement shall, if recorded, constitute a consensual lien upon any and all real estate owned by or held in trust for the benefit of the Undersigned at the time of such recording. However, the filing or recording of this Agreement shall be solely at the option of the Company, and the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of the Company under this Agreement or otherwise. The use of this Agreement as a Security Agreement, Financing Statement or for a consensual lien shall in no way abrogate, restrict or limit the rights of the Company under this Agreement or at law or in equity.

SIXTEENTH: The Company, at its option and in its sole discretion, may decline to execute or issue any Bond without incurring any liability to the Undersigned. If the Company issues a bid bond or similar undertaking and the Contractor is successful in bidding the project, the Company may nevertheless decline to issue the performance bond, the payment bond, or any other bond required by the awarding entity, without incurring any liability to the Undersigned, and the Undersigned agree that such a bid bond is a Bond to which this Agreement applies.

SEVENTEENTH: Upon any demand being made, notice given, or action or proceeding commenced against the Contractor for which the Company may be held liable in whole or in part, the Undersigned will immediately cause written notice thereof to be given by certified mail to the Company at its Home Office in Des Moines, Iowa. In the event of suit or legal proceedings against the Company upon or on account of any such Bond, the Company shall have the right to apply to the court in which such action is brought for an order making the Undersigned defendants, and the Undersigned hereby consent to the granting of such application and agree to become such a party defendant, and in the event any judgment be rendered against the Company, to allow judgment in like amount to be rendered against the Undersigned in favor of the Company, if the Company so requests. The Undersigned shall fully cooperate with the Company in the defense of any claims or suits brought against the Company. As to any legal action or proceeding related to this Agreement, the Undersigned consent to the general jurisdiction of any local, state, or federal court of competent subject matter jurisdiction and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis. The Undersigned further waive personal service of any and all process.

EIGHTEENTH: The Indemnitors warrant that each of them is specifically and beneficially interested in obtaining each Bond. In case the execution hereof by any of the parties is defective or invalid for any reason, such defect or invalidity, or failure to execute, or termination hereof by any party, shall not in any manner affect the validity of this Agreement or the liability hereunder as to any or all of the other parties executing this Agreement, who shall remain fully bound and liable hereunder to the same extent as if such failure, defect, invalidity or termination had not occurred. If any provisions of this Agreement are void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted. The rights and remedies afforded the Company by this Agreement shall not be waived or modified orally. The Company shall be entitled to enforce the obligations of this Agreement directly against the Indemnitors, or any one of them, without the necessity of first proceeding against the Contractor.

NINETEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Company as to any and all Bonds heretofore or hereafter executed by it. This Agreement applies to Bonds executed by the Company on behalf of any of the Undersigned and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

TWENTIETH: Each of the Undersigned may notify the Company of such Undersigned's withdrawal from this Agreement. Such notice shall be in writing, sent by certified mail to the Company's Home Office, and shall state when, not less than thirty days after receipt of such notice by the Company, such withdrawal shall be effective. Such Undersigned will not be liable under this Agreement as to any bonds executed by the Company after the effective date of such notice. However, as to any and all Bonds executed or authorized by the Company prior to the effective date of such notice, and as to any and all renewals, continuations and extensions thereof or substitutions therefore, and, as to a proposal or bid Bond executed or

authorized prior to such effective date, and as to any contract Bond executed pursuant to any such proposal or bid Bond, regardless of when the same are executed, such Undersigned shall be and remain fully liable hereunder, as if said notice had not been given.

TWENTY-FIRST: THE UNDERSIGNED REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT INCLUDING THIS PAGE AND THE FIVE PRECEEDING PAGES AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

TWENTY-SECOND:

EXECUTED this \_\_\_2nd\_\_\_ day of _____April_____ , \_\_\_2010\_\_\_ .

Chagrin Valley Paving, Inc.

_____
Contractor Paul A. Phillips, President

_____
Indemnitor Paul A. Phillips, Individually
Social Security #_____

_____
Indemnitor Kara L. Phillips, Individually
Social Security #_____

Chagrin Valley Paving LLC

_____
Indemnitor Paul A. Phillips, Managing Member
Social Security #_____

Phillips National Paving Group LLC

_____
Indemnitor Paul A. Phillips, Managing Member
Social Security #_____

Phillips Family Enterprises LLC

_____
Indemnitor Paul A. Phillips, Managing Member
Social Security #_____

Store It, Lock It, Leave It LLC

_____
Indemnitor Paul A. Phillips, Managing Member
Social Security #_____

_____
Indemnitor
Social Security #_____

_____
Indemnitor
Social Security #_____

_____
Indemnitor
Social Security #_____

_____
Indemnitor
Social Security #_____

_____
Indemnitor
Social Security #_____

_____
Indemnitor
Social Security #_____

**NOTARIZATION IS REQUIRED - SEE NOTARIZATION PAGE**

**CONTRACTOR NOTARIZATION:** (For Partnerships and Corporations Including Limited Liability Companies)

STATE OF __OHIO__
COUNTY OF __GEAUGA__ ss.:
On this __2nd__ day of __APRIL__, __2010__, before me personally appeared __Paul A. Phillips__

to me known to be the __President__ of __Chagrin Valley Paving, Inc.__ the Contractor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL) CHRISTINE CHESS
Notary Public
In and for the State of Ohio
My Commission Expires
December 22, 2013

Notary Public, residing at __Chesterland, OH__
(Commission expires __12/22/2013__)

**INDEMNITOR NOTARIZATION:** (To Be Used For Partnerships, Corporations, Including Limited Liability Companies & Trusts)

STATE OF __Ohio__
COUNTY OF __Geauga__ ss.:
On this __2nd__ day of __April__, __2010__, before me personally appeared __Paul A. Phillips__

to me known to be the __Managing Member__ of __Phillips National Paving Group LLC__, an Indemnitor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL) CHRISTINE CHESS
Notary Public
In and for the State of Ohio
My Commission Expires
December 22, 2013

Notary Public, residing at __Chesterland, OH__
(Commission expires __12/22/2013__)

**INDEMNITOR NOTARIZATION:** (To Be Used For Persons Who Sign As An Individual)

STATE OF __Ohio__
COUNTY OF __Geauga__ ss.:
On this __2nd__ day of __April__, __2010__, before me personally appeared __Paul A. Phillips, Kara L. Phillips__

_____, to me known and known to me to be the individual(s) described in and who executed this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

(SEAL) CHRISTINE CHESS
Notary Public
In and for the State of Ohio
My Commission Expires
December 22, 2013

Notary Public, residing at __Chesterland, OH__
(Commission expires __12/22/2013__)

**CONTRACTOR NOTARIZATION:** (For Partnerships and Corporations Including Limited Liability Companies)

STATE OF _____

COUNTY OF _____ ss.:

On this _____ day of _____, _____, before me personally appeared _____

_____

to me known to be the _____ of

_____ the

Contractor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _____

(Commission expires _____)

**INDEMNITOR NOTARIZATION:** (To Be Used For Partnerships, Corporations, Including Limited Liability Companies & Trusts)

STATE OF _Ohio_

COUNTY OF _Geauga_ ss.:

On this _3rd_ day of _April_ _2010_, before me personally appeared Paul A. Phillips

_____

to me known to be the _____ Managing Member _____ of

_____ Chagrin Valley Paving LLC _____, an Indemnitor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL) CHRISTINE CHESS
Notary Public
In and for the State of Ohio
My Commission Expires
December 22, 2013

Notary Public, residing at _Chardon, OH_

(Commission expires _12/22/2013_)

**INDEMNITOR NOTARIZATION:** (To Be Used For Persons Who Sign As An Individual)

STATE OF _____

COUNTY OF _____ ss.:

On this _____ day of _____, _____, before me personally appeared _____

_____

_____, to me known and known to me to be the individual(s) described in and who executed this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _____

(Commission expires _____)

**CONTRACTOR NOTARIZATION:** (For Partnerships and Corporations Including Limited Liability Companies)

STATE OF _____
                                        ss.:
COUNTY OF _____

On this _____ day of _____, _____, before me personally appeared _____

_____

to me known to be the _____ of
_____ the
Contractor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _____
(Commission expires _____)

**INDEMNITOR NOTARIZATION:** (To Be Used For Partnerships, Corporations, Including Limited Liability Companies & Trusts)

STATE OF _Ohio_
                                        ss.:
COUNTY OF _Geauga_

On this _2nd_ day of _April_ _2010_, before me personally appeared Paul A. Phillips

_____

to me known to be the _____ Managing Member _____ of
_____ Phillips Family Enterprises LLC _____, an Indemnitor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

CHRISTINE CHESS
Notary Public
In and for the State of Ohio
My Commission Expires
December 22, 2013

Notary Public, residing at _Chesterland OH_
(Commission expires _12/22/2013_)

**INDEMNITOR NOTARIZATION:** (To Be Used For Persons Who Sign As An Individual)

STATE OF _____
                                        ss.:
COUNTY OF _____

On this _____ day of _____, _____, before me personally appeared _____

_____

_____, to me known and known to me to be the individual(s)
described in and who executed this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _____
(Commission expires _____)

CONTRACTOR NOTARIZATION: (For Partnerships and Corporations Including Limited Liability Companies)

STATE OF _____
ss.:
COUNTY OF _____

On this_____ day of _____, _____, before me personally appeared _____

_____

to me known to be the_____ of
_____ the
Contractor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

_____
Notary Public, residing at _____
(Commission expires _____)

INDEMNITOR NOTARIZATION: (To Be Used For Partnerships, Corporations, Including Limited Liability Companies & Trusts)

STATE OF _Ohio_____
ss.:
COUNTY OF _Geauga_____

On this _2nd_ day of _April_____ _2010_, before me personally appeared Paul A. Phillips

_____

to me known to be the_____ Managing Member _____ of
Store It, Lock It, Leave It LLC _____, an Indemnitor executing this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

CHRISTINE CHESS
Notary Public
In and for the State of Ohio
My Commission Expires
December 22, 2013

_Christine Chess_ (signature)
Notary Public, residing at _Chesterland OH_
(Commission expires _12/22/2013_)

INDEMNITOR NOTARIZATION: (To Be Used For Persons Who Sign As An Individual)

STATE OF _____
ss.:
COUNTY OF _____

On this_____ day of _____, _____, before me personally appeared _____

_____

_____, to me known and known to me to be the individual(s)
described in and who executed this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

_____
Notary Public, residing at _____
(Commission expires _____)